T.C. Memo. 2011-181

UNITED STATES TAX COURT

ESTATE OF NICHOLAS TELESMANICH, DECEASED, KRESIMIR TELESMANICH,
EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24129-09.                    Filed August 1, 2011.

Kresimir Telesmanich, pro se.

<u>Robert W. Mopsick</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Pursuant to section 6404(h),[1] the Estate of

Nicholas Telesmanich, Deceased (the estate), Kresimir

Telesmanich, Executor, challenged respondent's Full

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code as amended, and all Rule references are
to the Tax Court Rules of Practice and Procedure.

Disallowance--Final Determination letter denying the estate's claim for abatement of interest for income tax liabilities for 2001, 2002, and 2004 through 2006. The issues for decision are: (1) Whether the estate is entitled to an abatement of interest of $2,816.19 under section 6404(e); and (2) whether the doctrine of equitable estoppel prevents respondent from assessing the interest.

## FINDINGS OF FACT

There are no written stipulations. However, joint exhibits 1-J through 5-J were received in evidence and are incorporated herein by this reference.

On September 14, 2000, Nicholas Telesmanich (decedent) died. Decedent's nephew, Kresimir Telesmanich (Mr. Telesmanich), was named executor of the estate. The estate included $438,572 held in accounts with Fidelity Investments (Fidelity).[2]

At the time of his death decedent resided in Croatia. Mr. Telesmanich attempted to have decedent's will probated in New Jersey, but the New Jersey court required that the will be probated in Croatia. The Croatian court refused to issue letters testamentary or to recognize the executor, and Mr. Telesmanich was unable to gain access to the estate's funds until February

---

[2] Although it is unclear from the record, it appears that this was the sole asset, or at least the only substantial asset, of the estate.

2008.[3]  Mr. Telesmanich resided in New Jersey when the petition was filed.

Conversation With the IRS

In 2002 Mr. Telesmanich contacted the Internal Revenue Service (IRS) to obtain an employer identification number for the estate.  Soon after, Mr. Telesmanich received a letter from the IRS stating that he was required to file a Form 1041, U.S. Income Tax Return for Estates and Trusts, for 2001.  Mr. Telesmanich called the IRS and explained that he was unable to pay the taxes because he could not gain access to the estate's funds.  Mr. Telesmanich is unable to name the person with whom he spoke or the exact date on which the call took place.  The unidentified IRS employee instructed Mr. Telesmanich to pay the taxes when he gained access to the funds and to send a letter to the IRS explaining his situation, which Mr. Telesmanich promptly did. The IRS employee told Mr. Telesmanich that he would not owe anything other than the taxes.  After that conversation, Mr. Telesmanich was under the impression that interest would not accrue on the underlying tax liabilities, although the IRS employee did not specifically mention whether interest would be assessed.

---

[3]  After Croatia completed the probate process in 2006, Fidelity obtained its own attorney in Croatia and required affidavits from the 36 beneficiaries recognizing Mr. Telesmanich as executor before allowing Mr. Telesmanich access to the funds.

- 4 -

Filing and Payment of Taxes

Once Mr. Telesmanich gained access to the estate's funds in 2008, he promptly filed the estate's Forms 1041 for years 2001 through 2006 and paid the corresponding tax liabilities.  Upon receipt of the returns respondent assessed late-filing and failure to pay additions to tax, along with interest on the additions to tax and underlying tax liabilities.[4]  Respondent abated the additions to tax and interest thereon at Mr. Telesmanich's request, but not the interest on the underlying tax liabilities.  Respondent subsequently issued a Full Disallowance--Final Determination letter, denying Mr. Telesmanich's request for abatement of interest because there is no "provision in the Internal Revenue Code that permits the abatement of interest when taxes are not paid timely."

OPINION

I.  Interest Abatement

We review the Commissioner's determination not to abate interest for abuse of discretion.  Sec. 6404(h)(1).  The Court will direct the Commissioner to abate interest only if the Commissioner's exercise of discretion was arbitrary, capricious, or without sound basis in fact or law.  See Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Mathia v. Commissioner,

_____

[4]  Additions to tax and interest were not assessed for 2003 because no tax was owed for that year.

T.C. Memo. 2009-120; Kincaid v. Commissioner, T.C. Memo. 1999-419.

Section 6404(e)(1) provides that the Secretary may abate the assessment of interest on any payment of tax to the extent that any unreasonable error or delay in such payment is attributable to an officer or employee of the IRS being erroneous or dilatory in performing a ministerial or managerial act.[5] The Secretary may abate the assessment of interest only when no significant aspect of the error or delay is attributable to the taxpayer. Sec. 6404(e)(1) (flush language). A ministerial act is a procedural or mechanical act that does not involve the exercise of judgment or discretion and occurs during the processing of a taxpayer's case after all the prerequisites to the act, such as conferences and review by supervisors, have taken place. See Lee v. Commissioner, 113 T.C. 145, 149-150 (1999); sec. 301.6404-2(b)(2), Proced. & Admin. Regs. In contrast, a decision concerning the proper application of Federal tax law is not a ministerial act. Sec. 301.6404-2(b), Proced. & Admin. Regs.

Mr. Telesmanich contends that he is entitled to interest abatement because the IRS employee with whom he spoke told him no

---

[5] A managerial act is an administrative act that involves a temporary or permanent loss of records or the exercise of judgment or discretion relating to personnel management during the processing of a taxpayer's case. Sec. 301.6404-2(b)(1), Proced. & Admin. Regs. Mr. Telesmanich does not argue that the IRS employee erred in performing a managerial act.

additional payments would be required if he paid the taxes when the funds became available.  Respondent counters that this cannot be grounds for abatement because it involves the proper application of Federal tax law and thus is not a ministerial act. See sec. 301.6404-2(b), Proced. & Admin. Regs.

Section 6601(a) requires that a taxpayer pay interest on any assessed Federal income tax that is not paid "on or before the last date prescribed for payment" and that such interest be computed for "the period from such last date to the date paid." See also Hinck v. United States, 550 U.S. 501, 503 (2007).  It is well settled that an IRS employee's giving incorrect advice on the proper application of Federal tax law is not a ministerial act.  See Nelson v. Commissioner, T.C. Memo. 2004-34 (concluding that IRS employee's incorrect advice to taxpayer on consequence of individual retirement account distribution was not ministerial act); Sainte-Yves v. Commissioner, T.C. Memo. 2002-158 (concluding that IRS employee's alleged advice on deductibility of losses did not constitute ministerial act). Therefore, any incorrect advice as to whether the estate would be assessed interest would constitute advice on the proper application of Federal tax law and not a ministerial act.

Furthermore, Mr. Telesmanich has not shown that the IRS employee's error caused him to delay the payment of taxes.  See sec. 6404(e)(1)(B).  Even if the IRS employee had told Mr.

Telesmanich about the accrual of interest, there is nothing to suggest that the taxes would have been paid any earlier than when the funds became available. Mr. Telesmanich testified that had he known of the interest he would have accounted for it in the estate's expenses just as he did for the taxes, implying the taxes still would not have been paid until 2008. Thus, respondent was not responsible for the delay in payment, with or without any alleged error by the IRS employee.

Accordingly, respondent did not abuse his discretion when denying the estate's request for abatement of interest assessed on the underlying tax liabilities.

II. Equitable Estoppel

"Equitable estoppel is a judicial doctrine that 'precludes a party from denying his own acts or representations which induced another to act to his detriment.'" Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992) (quoting Graff v. Commissioner, 74 T.C. 743, 761 (1980), affd. 673 F.2d 784 (5th Cir. 1982)). The doctrine of equitable estoppel is applied against the Commissioner "with utmost caution and restraint". Schuster v. Commissioner, 312 F.2d 311, 317 (9th Cir. 1962), affg. 32 T.C. 998 (1959), affg. in part and revg. in part First W. Bank & Trust Co. v. Commissioner, 32 T.C. 1017 (1959).

The traditional elements of equitable estoppel--all of which must be satisfied to invoke the doctrine--are: (1) A false

representation or misleading silence by the party against whom the doctrine is to be invoked; (2) an error in a statement of fact and not an opinion or statement of law; (3) ignorance of the fact by the representee; (4) reasonable reliance on the act or statement by the representee; and (5) detriment to the representee.  See Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 60 (1995), affd. 140 F.3d 240 (4th Cir. 1998).

In addition to the traditional elements of equitable estoppel, the Court of Appeals for the Third Circuit, to which this case is appealable, requires the party seeking to apply to the doctrine against the Government to prove affirmative misconduct on the part of the Government officials.  Fredericks v. Commissioner, 126 F.3d 433, 438 (3d Cir. 1997) (citing United States v. Asmar, 827 F.2d 907, 911 n.4, 912 (3d Cir. 1987)), revg. T.C. Memo. 1996-222.  Not every form of official misconduct constitutes affirmative misconduct.  See id.  Affirmative misconduct requires more than negligence or even reckless negligence.  Hodel v. Commissioner, T.C. Memo. 1996-348 (citing Schweiker v. Hansen, 450 U.S. 785 (1981)).  A Government agent's providing inaccurate information does not constitute affirmative misconduct.  See Socop-Gonzalez v. INS, 272 F.3d 1176, 1184 (9th Cir. 2001) (stating that the Government employee negligently providing misinformation or incorrect advice was not affirmative misconduct); United States v. Manning, 787 F.2d 431, 437 (8th

Cir. 1986) (stating that the Government employee's arguably misleading or inaccurate statements did not rise to the level of affirmative misconduct).

The IRS employee did not tell Mr. Telesmanich that interest would be assessed if the taxes were not paid on time. There is no evidence, however, that the IRS employee omitted this information knowingly or intentionally. Accordingly, the IRS employee's omission does not constitute affirmative misconduct.

Because Mr. Telesmanich has not proven affirmative misconduct on the part of the IRS employee, we need not address the traditional conditions for application of equitable estoppel. See Miller v. Commissioner, T.C. Memo. 2001-55 (citing Purcell v. United States, 1 F.3d 932, 939 (9th Cir. 1993)). Accordingly, petitioner has not met the burden of proving each of the elements of equitable estoppel.

To reflect the foregoing,

Decision will be entered

for respondent.